UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHARON ARTIS,<br>Mother and Next Friend of<br>S.A., a Minor, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br>A municipal corporation, *et al.*,<br><br>    Defendants. | Civil Action No. 07-0932 (JDB) |

**DEFENDANTS' NOTICE OF SUBSEQUENT AUTHORITY
IN SUPPORT OF ITS JULY 24, 2007, MOTION
FOR PARTIAL DISMISSAL OF THE COMPLAINT**

    The Defendants, through counsel, respectfully notify this Court of subsequent authority in support of their July 24, 2007, Motion for Partial Dismissal of the Complaint, regarding prevailing party status under the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415. Attached hereto as Exhibit A is Judge Lamberth's August 1, 2007, Memorandum Opinion in *Robinson v. District of Columbia*, Civil Action No. 06-1253.

    The relevant pages are 8-11, in which the Court determines that the relief granted by the hearing officer did not constitute a change in the parties' legal relationship, which relates to the Defendants' Motion generally, and at pages 8-9 specifically.

                                                              Respectfully submitted,

                                                              LINDA SINGER
                                                              Attorney General
                                                              for the District of Columbia

                    GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH
Chief, Equity Section 2
Bar Number 012914

**/s/ Eden I. Miller**
EDEN I. MILLER
Assistant Attorney General
Bar Number 483802
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
(202) 724-6614
(202) 727-3625 (fax)
August 7, 2007        E-mail: Eden.Miller@dc.gov

Attachment A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMANTHA ROBINSON, for<br>A.B., a minor, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 06-1253 (RCL)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

By complaint [1] originally filed with this court on July 12, 2006, forty minors sought compensation for fees associated with administrative hearings conducted in regards to their disability status under the Individuals with Disabilities Education Improvement Act (IDEIA) and 42 U.S.C. § 1983. Since then, plaintiffs have voluntarily withdrawn these claims with respect to all parties except for J.G., J.H., and J.W. (*See*, Notice of Vol. Dismissal Partial [4], Oct. 10, 2006.) Defendants have filed a motion [5] to dismiss the § 1983 claims of all plaintiffs (J.G., J.H. and J.W.) and the IDEIA claims of J.G. and J.W. For reasons articulated herein, the defendants' motion is GRANTED. The claims of plaintiffs J.G. and J.W. are therefore entirely dismissed and the only matter still pending before this court is J.H.'s claim under the IDEIA.

**I. Statutory Background**

In 2005, Congress passed the Individuals with Disabilities Education Improvement Act in order to make certain that children with learning disabilities are able to fully utilize the public educational system. Congress found that, even though disabilities are a "natural part of the

human experience," 20 U.S.C. 1400 § (c)(1) millions of children with disabilities were not receiving appropriate educational services, *Id.* § (c)(2)(A) and these children were being entirely excluded from the public school system *Id.* § (c)(2)(B). The Act is meant to ensure that, "all children with disabilities have available to them a free appropriate public education (FAPE) that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). If a child is found to have special needs, the Act requires that the child be enrolled in a special education program at public expense. 20 U.S.C. § 1401(9)(A).

In order to determine the specifics of the child's special education and whether special education is even necessary, the child must undergo a full initial evaluation, *Id.* § 1414 (a)(1) and be subject to reevaluation at least once every three years *Id.* § 1414 (A)(2)(B)(ii). This evaluation is used to develop the child's "individualized education program" (IEP). 20 U.S.C. § 1414(d). This program must include "a statement of the child's present levels of educational performance... a statement of measurable annual goals, [and] a statement of the special education and related services...to be provided to the child..." *Holbrook v. Dist. of Columbia,* 305 F.Supp.2d 41, 44 (D.D.C.2004) (citing 20 U.S.C. § 1414(d)(1)(A)).

In order to ensure that the IDEIA fulfills its intended protections of handicapped children, the act provides for several procedural safeguards. These include an opportunity for mediation, 20 U.S.C. § 1415(b)(5); a complaint process with the right to an "impartial due process hearing," *Id.* § 1415(f)(1); and a right to appeal the determination of the hearing officer, *Id.* § 1415(g). If the parents of the child are dissatisfied with the results of the evaluation, e.g. the child was not found to have a disability; he or she may use the hearing process to obtain relief. 20 U.S.C. §

1415(b)(6). If the parent prevails at such hearing, he or she may recover reasonable attorney's fees under the IDEIA. 20 U.S.C. § 1415(i)(3)(B). Further, even though the Hearing Officer only provides administrative rather than judicial relief, parents may still obtain attorney's fees associated with obtaining a favorable administrative order. "It is well-established in this Circuit that section 1415(i)(3)(B) also authorizes a parent who prevails in an IDEA administrative hearing to recover attorney's fees by filing suit for the fees in federal court." *Kaseman v. District of Columbia*, 329 F.Supp.2d 20, 23 (D.D.C. 2004). *See also*, *Moore v. Dist. of Columbia*, 907 F.2d 165, 176 (D.C.Cir.1990); *Holbrook v. Dist. of Columbia,* 305 F.Supp.2d 41, 44 (D.D.C.2004).

### III. J.G.'s Factual Background

J.G. is a student enrolled at Stanton Elementary School, and is eligible for special education services. His current learning disability classification is learning disabled (LD), as concluded by his last IEP meeting on May 4, 2005. (Pl. Ex. 13, Hearing Officer's Decision, Jan. 17, 2006.) J.G. had been previously enrolled at St. Francis Xavier Catholic School, but after he displayed increasingly disruptive and threatening behavior in class,[1] he was transferred to Stanton Elementary School. (Ex. 13 at 3; Admin. Due Process Compl. Notice.) While his mother and teachers hoped that this new environment would help solve the problem, J.G. continued to exhibit the same behavior problems. A MDT/IEP meeting was held on October 19th, 2005 to review the findings of a clinical assessment that was previously held in 2004. (*Id.* at 4.) At this meeting, D.C. Public Schools conducted the following evaluations and did not find that the child

---

[1] These included, physically assaulting other students and staff, flipping over books and desks, biting and scratching other students, and making loud noises. (Ex. 13 at 3; Admin. Due Process Compl. Notice.)

was emotionally disturbed: a Psycho-Educational Evaluation, Social History Evaluation, Occupational Therapy Evaluation, Clinical Psychological Evaluation, and a Language Evaluation[2]. (Pl. Ex. 13, Hearing Officer's Decision at 4, Jan. 17, 2006.)  The MDT team decided to increase the student's counseling services and also implemented a Behavioral Intervention Plan. (*Id.*)  However, DCPS did not conclude that the child should be classified as emotionally disturbed.  J.G.'s mother was convinced that her child was misclassified and filed a complaint in the State Enforcement and Investigation Division of the Education Agency of the District of Columbia alleging that this denied her child free access to a public education. (*See*, Pl. Ex. 13, Administrative Due Process Complaint Notice.)

The hearing complaint alleges that DCPS failed to comply with the August 15, 2005 Hearing Officer Determination, failed to appropriately identify the student's special education eligibility, failed to develop an appropriate IEP, failed to conduct a functional behavioral assessment, failed to place the student in an appropriate placement, and failed to timely provide the student with his special education instruction and related services. (Compl. at 21.)  For relief, plaintiff asked that DCPS place the student in various other schools,[3] fund his education, fund the parent's independent psychiatric and neuropsychological evaluations, convene a MDT/IEP

---

[2] This evaluation came pursuant to a Hearing Officer's Determination on August 15, 2005 that ordered DCPS to convene a MDT meeting to review an Occupational Therapy evaluation, discuss and determine the best way to implement the assessment to rule out ADHD and revise the child's IEP. (Pl. Ex. 13, Hearing Officer's Decision at 3, Jan. 17, 2006.)

[3] These include: the Accotink Academy, Rock Creek Academy, Pathways School, the Sunrise Academy, the High Roads Upper School in Prince George's County, or the High Roads School in Washington, D.C. (Compl. at 21.)

meeting within ten business days to review and revise the student's IEP, and fund four hours of individualized tutoring each week for three years. (*Id.*)

On January 17, 2006, Hearing Officer Charles Jones issued a ruling that DCPS did not deny J.G. free access to a public education because, "a preponderance of the evidence supports DCPS' contention that DCPS did comply with the Hearing Officer's Determination (of August 15, 2005) as the team did discuss assessments and, thereafter, the MDT team did not agree to further evaluate the student, as the battery of evaluations performed did not warrant further evaluations." (Pl. Ex. 13, Hearing Officer's Decision at 5, Jan. 17, 2006.) However, the hearing officer did find that, "[T]he record reflects significant unanswered questions concerning J.G., which justify the performance of a Psychiatric Evaluation." (*Id.*) Therefore, the hearings officer ordered DCPS to conduct a psychiatric evaluation within 30 days of the order, and within 15 days of this evaluation convene a MDT/ IEP meeting to review all current evaluations. (*Id.* at 6.) Whether the child would actually be placed in a different school or receive compensatory education was still yet to be determined by the MDT team and the psychiatric evaluation.

### IV. J.W.'s Factual Background

J.W. is a thirteen year-old male student attending Rock Creek Academy who has been found to be eligible for special education services due to his classification as a student with an emotional disturbance. (Pl. Ex. 38, Hearing Officer's Decision, January 18, 2006 at 2.) On June 8, 2005 the child was evaluated by a clinical psychologist who recommended he undergo a neuropsychological evaluation in order to rule out the diagnosis of Attention Deficit Hyperactivity Disorder. This evaluation would assess the cognitive abilities of the student in the areas of executive functioning, memory and visuospacial functioning. (Pl. Ex. 38,

5

Administrative Due Process Complaint Notice, October 5, 2005, at 2.) Plaintiff notified DCPS of the doctor's recommendation, but DCPS did not order such an evaluation before the hearing complaint was filed. (*Id.* at 3.) The psychologist also recommended that the student undergo a psychiatric evaluation in order to determine if the child indeed had ADHD and to possibly prescribe medication to treat the disorder. Plaintiff also notified DCPS of this recommendation, and at a November 17, 2005 MDT/IEP meeting DCPS agreed to perform the psychiatric evaluation. (Pl. Ex. 38, Hearing Officer's Decision, January 18, 2006 at 2.)

Plaintiff filed a complaint with the State Enforcement and Investigation Division of the Education Agency of the District of Columbia alleging that DCPS had denied J.W. free access to a public education because the District had not performed either of these evaluations. For relief, plaintiff sought an order requiring DCPS to perform these evaluations, convene an IDT/MDT meeting withing five days of the evaluations to revise the student's IEP, provide compensatory one-on-one tutoring for one year. (Administrative Due Process Complaint Notice at 4.) The hearings officer found that DCPS had not denied J.W. free access to a public education. DCPS had performed a neuropsychological evaluation,[4] and DCPS agreed to perform the psychological evaluation, but had not yet done so. (Pl. Ex. 38, Hearing Officer's Decision, January 18, 2006 at 3.) Therefore, the hearings officer set a deadline (January 30, 2006) by which DCPS needed to fulfill this promise. (*Id.*)

## V. Legal Standards

---

[4] Presumably, the evaluation was performed sometime between the filing of the complaint (October 5, 2005) and the hearing officer's order (January 18, 2006).

6

Defendants have moved for dismissal for failure to state a claim pursuant to Federal Rule 12(b)(6). Rule 8(a)(2) requires only, "a short and plain statement of the claim showing that the pleader is entitled to relief." While this is a fairly lenient standard, the Supreme Court held, "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level…" *Bell Atlantic, Corp., v. Twombly*, No. 05-1126, slip op. at 8 (May 21, 2007).

In ruling on a 12(b)(6) motion the court can consider other things besides the pleadings but this practice is limited. *See*, *E.E.O.C. v. St. Francis Xavier Parochial School*, 117 F.3d 621, 625 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents attached to or incorporated in the complaint, and matters of which we may take judicial notice.")

The court may use its discretion to award reasonable attorney's fees to parties who prevail in an action brought under the IDEIA. 20 U.S.C. § 1415(i)(3)(R)(I). To obtain "prevailing party" status, the plaintiff must show first that there was a court-ordered change in the legal relationship between the plaintiff and the defendant; second, that the judgment was rendered in the claimant's favor; and third, that the claimant was not a prevailing party merely by virtue of having acquired a judicial pronouncement rather than judicial relief. *Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. Of Health & Human Res.*, 532 U.S. 598, (2001).[5] Further, there must

---

[5]The *Buckhannon* standards apply to administrative hearings under the IDEIA even though the relief granted is administrative rather than judicial. *See*, *Armstrong v. Vance*, 328 F.Supp.2d 50, 56 (D.D.C. 2004) (rejecting "catalyst theory" and adopting the *Buckhannon* test to determine "prevailing parties" under the IDEIA). Any reference to "court ordered" relief in this document should be understood as "hearing officer-ordered" relief, as the proceedings are

be an "alteration in the legal relationship of the parties" that has been given some judicial imprimatur in order to qualify as a "prevailing party" under fee-shifting statutes. *Armstrong v. Vance,* 328 F.Supp.2d 50, 57 (D.D.C. 2004) (quoting *Buckhannon Bd. & Care Home, Inc. v. W.V. Dept. Of Health & Human Res.*, 532 U.S. 598, (2001)). This approach has been endorsed by other courts despite the silence of a definition of "prevailing party" in the IDEIA. *See, Alegria v. District of Columbia*, 391 F.3d 262 (D.C. Cir. 2004) (rejecting plaintiff's contention that the *Buckhannon* standard does not apply so plaintiff could obtain attorney's fees in a hearing after a settlement agreement); *See also*, *T.S. ex rel. Skrine v. D.C.*, 2007 WL 915227 (D.D.C., 2007); *Abraham v. D.C.*, 338 F.Supp.2d 113 (D.D.C. 2004).

## V. Analysis

The factual allegations stated in the plaintiff's complaint do not amount to a claim upon which the court can grant relief. While the plaintiffs do not need to obtain judicial relief in a court of law to recover attorney's fees under the IDEIA, they still need to prove that they were the prevailing parties in an administrative hearing. *See*, *Abraham v. D.C.*, 338 F.Supp.2d 113 (D.D.C. 2004). In the hearings of both J.G. and J.W., the Hearing Officer did not find a denial of a free appropriate public education, and the relief that was granted to them was only a prerequisite for changing the child's disability classification.

First, the Hearing Officer did not find that the children were denied access to a free appropriate public education. If the HO did make such a finding, plaintiffs would be allowed reasonable relief as this constitutes a direct violation of the statute. *See*, 20 U.S.C. §

---

administrative in nature, not judicial.

1415(i)(2)(B)(iii). If the HO does not find a denial of a FAPE, this does not necessarily mean that the plaintiffs cannot seek attorney's fees, but recovery is limited. In *T.S. ex rel. Skrine v. District of Columbia*, 2007 WL 915227 (D.D.C. 2007), the court found that plaintiffs had prevailed at the administrative level despite no denial of a FAPE because they had obtained all relief requested, even though such relief was only DCPS's funding of an independent evaluation and the holding of a new IEP meeting. Thus, whether the plaintiff can be termed a "prevailing party" depends more on whether he has obtained his primary objective in seeking an administrative hearing.

Secondly, the relief that was granted to each of the plaintiffs was partial at best. Plaintiff for J.G. had the primary objective of reclassifying her child as emotionally disturbed so that he could be placed in a different school and receive compensatory tutoring. The hearing officer did not grant such relief to plaintiff. The HO specifically found that DCPS did fulfill its duties of evaluating the child as ordered in the August 15, 2005 hearing, and that the child was never denied free access to a public education by the District. The most that the HO did grant was another evaluation because there was some evidence that the child's current placement at Stanton Elementary was inappropriate. This order did not render a judgment in favor of plaintiff on the merits. It is still unknown whether the evaluation will show that the child's educational placement and classification are incorrect. Further, even if the hearings officer did decide that the child's current classification was incorrect and ordered another evaluation to reclassify him, this would not constitute grounds for attorney fees. *See*, *Mata v. Elsie Whitlow Stokes Comm'y Freedom P.C.S.*, Slip Copy, WL 1521047 (D.D.C. 2007) (holding that plaintiff was not a prevailing party when the hearing officer found that the child's classification as "other health

9

impaired" was incorrect, but did not find that he had Asperger's Syndrome and instead ordered another evaluation to determine the child's classification).

In the case of J.W., he had requested that DCPS provide both a neuropsychological evaluation and a psychiatric evaluation. The hearings officer found that DCPS had performed the neuropsychological evaluation by the time the matter came before it, and DCPS had also agreed to perform the psychiatric evaluation, but had not yet done so. Because DCPS had already performed or agreed to perform the evaluations, there was not much the hearings officer could award the plaintiff J.W. The most that the HO granted to plaintiff was a deadline by which DCPS had to perform the psychiatric evaluation that they had agreed to. Consequently, the relief granted could not possibly constitute a hearing officer-ordered change in the legal relationship between DCPS and plaintiff. In *Smith ex rel. Battle v. District of Columbia*, 117 Fed. Appx. 767 (D.C. Cir. 2004), the court found that a party cannot obtain attorney fees when he "prompt[s] a school district to provide special educational services even absent a settlement...and merely catalyzes government action." Even if plaintiff claims that she has been able to convince DCPS to perform a neuropsychological evaluation and agree to a psychological evaluation, this cannot be the basis for attorney fees. A significant portion of the relief sought must have been ordered by the hearing officer, and this has not been the case. *See*, *Buckhannon*, 532 U.S. at 605, ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.") *See also*, *Mata v. Elsie Whitlow Stokes Comm'y Freedom P.C.S.*, Slip Copy, WL 1521047 (D.D.C. 2007) (Hearing officer did not find that the student was denied free access to a public education,

10

and only "directed the parties to continue on the course that [the child's school] was already following.").

## VI. The § 1983 Claim

Plaintiffs originally claimed the court should award attorney's fees pursuant to 42 U.S.C. § 1983, to enforce their rights under the IDEIA. All plaintiffs have since abandoned this claim in their opposition to defendant's motion to dismiss, and do not address the matter further. Opp'n at 3. Defendants' 12(b)(6) motion will be GRANTED with respect to the § 1983 claims of J.G., J.H., and J.W. Thus, the § 1983 claims of all remaining plaintiffs will be dismissed.

## VII. Conclusion

On the face of plaintiffs' complaint, the facts alleged do not constitute a claim for attorneys' fees under the IDEIA. Plaintiffs J.G. and J.W. have not asserted that they were the prevailing parties in their respective administrative hearings because the relief they were granted did not constitute a change in the parties' legal status. For the foregoing reasons, defendants' Motion will be GRANTED as to all claims regarding J.G and J.W., and defendants' motion to dismiss the § 1983 claims of all remaining plaintiffs will also be GRANTED.

A separate order shall issue this date.

Signed by Royce C. Lamberth, U.S. District Court Judge, August 1, 2007.